UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D. ETTA WILCOXON,

     Plaintiff,

v.

     Case No.  5:22-cv-12779
     District Judge Judith E. Levy
     Magistrate Judge Kimberly G. Altman

LINDA BERNARD, WILLIE BELL,
ANNIE HOLT, LISA CARTER,
MELONY WHITE, JIM HOLLEY,
WILLIE BURTON, JESUS
HERNANDEZ, FRANCES
JACKSON, JOHN TIPTON,
TAMARA TERRANCE, TERESA
BLOSSOM, ERICKA WHITLEY, and
CITY OF DETROIT,

     Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 3, 4) [1]

I.    Introduction

This is a case arising out of Plaintiff D. Etta Wilcoxon (Wilcoxon) being

passed over for the position of Secretary of the Board of Police Commissioners for

the City of Detroit.  (ECF No. 1-1).  Wilcoxon, proceeding *pro se*, filed a

---

[1] Upon review of the parties' papers, the undersigned deems these matters appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

complaint[2] naming the following defendants: Linda Bernard (Bernard); Willie Bell (Bell); Annie Holt (Holt); Lisa Carter (Carter); Melanie White (White); Jim Holly (Holly); Willie Burton (Burton); Jesus Hernandez (Hernandez); John Tipton, II (Tipton); Tamara Terrance (Terrance); Teresa Blossom (Blossom); Ericka Savage-Whitley (Savage-Whitley); the City of Detroit (the City) (collectively the City Defendants);[3] and Frances Jackson (Jackson), Parliamentarian to the Detroit Board of Police Commissioners.  Wilcoxon asserts the following claims:  Count I - Tortious Interference with a Business Relationship or Expectancy; Count II - Civil Conspiracy and Concert of Action; Count III – Equal Protection Violations; violation of the Michigan Constitution; Count IV – Defamation; Count V – 42 U.S.C. § 1983; Count VI - Violation of the Michigan Open Meetings Act; Count VII – False Light/Invasion of Privacy; Count VIII – Intentional Infliction of Emotional Distress; Count ; Count IX – 42 U.S.C. § 1985; Count X – 42 U.SC. § 1986; and Count XI – Exemplary Damages. (*Id*.).[4]  Defendants removed the case to federal court on the grounds of federal question jurisdiction.  (ECF No. 1).

---

[2] The complaint is 87 pages long and contains 202 paragraphs.

[3] The undersigned uses the spelling for defendants' names as found in their motion papers.

[4] Wilcoxon is suing Bernard, Bell, Holt, Carter, White, and Blossom in their official and personal capacities; the other individual defendants are sued only in their official capacities.  *See* ECF No. 1-1.

Before the Court is the City Defendants' motion to dismiss for failure to state a claim, (ECF No. 4), and Jackson's motion to dismiss, (ECF No. 3).  The motions are fully briefed.  (ECF Nos. 10, 11, 13, 14, 15).  For the reasons that follow, it is RECOMMENDED that both of defendants' motions be GRANTED and Wilcoxon's federal claims (Counts V, IX, X, and XI) be DISMISSED WITH PREJUDICE and her state law claims (Counts I, II, III, IV, VI, VII, VIII) be DISMISSED WITHOUT PREJUDICE.

## II.     Background

### A.     Plaintiff's Allegations

Wilcoxon's complaint contains the following allegations, which are presumed true when considering a motion to dismiss.

On or about September 6, 2021, Wilcoxon timely submitted an application for the position of secretary of the City of Detroit Board of Police Commissioners (the Board).  The City had a system in place by which it would narrow the number of applicants to three, offer those three applicants an interview, and make an offer of employment to the final applicant.  (ECF No. 1-1, PageID.13).

Wilcoxon was contacted in October 2021 by White, the interim secretary for the Board, to set a date and time for her interview for the position.  (*Id*., PageID.15).  Wilcoxon was available on her interview date, but neither White nor media specialist Blossom were able to present her to the Board for her confirmed

interview over Zoom.  (*Id*.).  The interview was thus postponed.  (*Id*.).

Wilcoxon was able to attend her interview in person on the rescheduled date of November 4, 2021.  (*Id*., PageID.16).  During the interview, Bernard, a Commissioner, "disparagingly" questioned Wilcoxon's qualifications during the interview, doubting that Wilcoxon could have handled cases "at every level of Michigan's Court system" as an *in pro per* litigant.[5]  (*Id*.).  This created the "false inference" that Wilcoxon had misrepresented or lied about her experience.  (*Id*.).  Commissioner Bell indicated that the Board would need an answer as to the veracity of Wilcoxon's representations before proceeding.  (*Id*., PageID.17).  Despite her capability to do so, as an attorney, Bernard did not explain or answer Bell's questions or concerns regarding the legal capacity of Wilcoxon to represent herself at these levels of court.  (*Id*.).  Bell suggested opening the position up to "more candidates that are on the list," but eventually Chairperson Holly asked if Wilcoxon's candidacy should be called for a vote.  (*Id*., PageID.18).  Bernard objected, stating that the Board should not vote until it had done background checks and received references.  (*Id*.).

Tipton advised Bernard that offers were tentative and that background

---

[5] A review of the Court's electronic case filing system shows that Wilcoxon was a *pro se* plaintiff along with others in two cases in this district which are now closed: *Davis, et al., v. Detroit Downtown Development Authority, et al.*, 17-cv-11742, and *Davis et al., v. Detroit Public Schools Community District, et al.*, 17-cv-12100.

checks were done after the tentative offer was made, as a matter of City policy. (*Id.*, PageID.19).  Despite this, Wilcoxon states that the Board violated this policy and conducted background and reference checks before offering the position to Wilcoxon, in violation of her "business expectancy."  (*Id.*).  Bernard also demanded that Wilcoxon's lawsuits be investigated before an offer was made, in violation of City policy.  (*Id.*).

Wilcoxon was informed at some point by Burton, another Commissioner, that the interview process was complete after the interviews of the final three candidates.  Tipton, a Human Resources Specialist for the Board, affirmed this information, who told Wilcoxon that "the decision would be made at a prior meeting" in response to a Commissioner's motion to "extend the search" beyond those candidates.  (*Id.*, PageID.13-14).

At a December 2, 2021 Board meeting, Commissioners Bernard and Bell made "unrelenting efforts to remove [Wilcoxon from] contention for the vacant Board Secretary" position, and Tipton advised them that based on the advice of Savage-Whitley, the Law Department Representative for the Board, the two remaining candidates including Wilcoxon should be informed that the Board was moving on with other candidates.  (*Id.*, PageID.14).  Burton indicated again that Wilcoxon was told the hiring process was complete and that the body needed to be transparent to avoid the appearance of corruption taking place within the Board,

which could result in lawsuits.  (*Id.*, PageID.15).

Burton went on to suggest that the Board vote between the two remaining candidates at that time (as the third candidate had dropped out of the running). (*Id.*, PageID.20).  Bernard "suggested, motioned, and vigorously argued that the pool of candidates be increased."  Another Commissioner, who is not a defendant in this case, responded that the Board should follow its past practices and vote on the two candidates that are available.  (*Id.*).  Ultimately, at the urging of Tipton, Bernard and Bell agreed that the Board would inform the two finalists for the secretary position, one of whom was Wilcoxon, that it would postpone its decision for six months and that it would expand, but include those two candidates in, the selection process.  (*Id.*, PageID.27).  However, the Board did not begin its search for a secretary until October 2022, and Wilcoxon has had no communication with the Board as to her inclusion in its search.  (*Id.*).[6]

Wilcoxon contends that at the November and December 2021 meetings of the Board, Bernard and Bell conspired to thwart her candidacy for the position in favor of keeping interim secretary White in the position permanently.  (*Id.*, PageID.21-26).  This was due in part to Wilcoxon's reputation in many parts of Michigan as a "fierce advocate for 'We the People' for over forty years" and other

---

[6] It is unclear, but it appears that at the time the complaint was filed, the secretary position had yet to be filled.

advocacy.  (*Id.*, PageID.26).  As a result, Wilcoxon lost the expectancy of the position's annual salary as well as expected retirement benefits.  (*Id.*, PageID.28).  She also states that her credibility and character were attacked during these public meetings, (*Id.*, PageID.32), that she was discriminated against based on her race and her prior candidacy for Mayor against current Mayor Michael Duggan, (*Id.*, PageID.24), and defamed, (*Id.*, PageID.40-47).  She further asserts claims under § 1983 for violations of her Fourteenth Amendment due process rights, as well as a violation of the Open Meetings Act, a "False Light/Invasion of Privacy" claim, Intentional Infliction of Emotional Distress, and civil conspiracy under § 1985.  (*Id.*, PageID.48-92).

## B.      Defendants' Allegations

City Defendants state that Wilcoxon is a public figure in the City of Detroit and within the Michigan political sphere, as suggested in the complaint.  They acknowledge that she was previously a candidate for City of Detroit Mayor as well.  They admit that Wilcoxon applied for the Board secretary position in September 2021, was interviewed in November 2021, and was ultimately not appointed to the position by the Board.  (ECF No. 4, PageID.260-261).  They note that according to the City of Detroit Charter, which creates and empowers the Board, the Board has "supervisory control and oversight of the Police Department[,]" and "shall appoint a Board Secretary, who serves at its pleasure."

7

(*Id*. (quoting ECF No. 4-1)).  The Charter dictates that the Board shall have eleven members, seven of whom are elected, and four of whom are appointed by the mayor.  (*Id*.).  The undersigned takes judicial notice of the relevant portions of the Charter, as attached to City Defendants' motion.  (ECF No. 4-1).

Jackson moves for dismissal separately from the City Defendants.  (ECF No. 3).  She says that she is a contract employee of the Board, as demonstrated by the contract attached to her motion.  (ECF No. 3-3).  Her contract requirements included that she train the Board regarding parliamentary procedures, attend meetings upon request to advise the Board on parliamentary procedures, and to respond to questions on parliamentary rules and interpretation of the Board's bylaws.  (*Id*.).  The undersigned takes judicial notice of these facts as well.[7]

### III.   Motion to Dismiss Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana, Inc*., 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

---

[7] On a motion to dismiss, a court may take judicial notice of facts which are not subject to reasonable dispute.  Here, Jackson and Wilcoxon have both attached Jackson's contract with the Board in their motion and response, respectively, and do not question its accuracy.  *See* ECF No. 3-3; ECF No. 11, PageID.376-378.

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims, (2) matters of which a court may take judicial notice, (3) documents that are a matter of public record, and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972).  However, even in pleadings drafted by *pro se* parties, " 'courts should not

have to guess at the nature of the claim asserted.' "  *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him. . . .  [N]either may the Court 'conjure up unpled allegations[.]'

" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).

## IV.    Analysis

### A.    Federal Claims against Jackson

As noted above, Jackson was the parliamentarian for the Board by contract

and was in attendance in this role during the Board meetings that are described in

the complaint.

Jackson argues that there are no specific factual allegations of wrongdoing

or misconduct on her behalf, and that she appears to have been named in this suit

solely for her position as parliamentarian and for having been present at

Wilcoxon's November 2021 interview with the Board.  Specifically, while the City

Defendants are referenced in nearly 100 paragraphs of the complaint, Jackson is

only alleged to have stated correct parliamentary procedure, and that her co-

defendants are alleged to have violated that procedure as stated by Jackson.  (ECF

10

No. 3, PageID.112-113).  Jackson is also alleged to have acted "together in arbitrary fashion to dismiss and discredit" parliamentary procedure with her co-defendants.  (*Id*.).

In response, and to bolster her claims against Jackson, Wilcoxon adds a statement from former Commissioner William M. Davis (Davis), who was an active Commissioner during the events of the complaint.  Davis stated that he was present during Wilcoxon's interview, wherein Jackson advised the board that it was incorrect for the Board to change or modify a policy that it had previously agreed upon without a two-thirds vote (as opposed to a simple majority vote).  Davis added that Jackson never advised the Board whether it had corrected this incorrect procedure, and that the Board acted in violation of the correct procedure in the face of Jackson's silence on the issue.  (ECF No. 11, PageID.357-358, 373-374).  Wilcoxon goes on to argue that Jackson "was duty bound and did have the power to speak in opposition to the Board's violations . . . but she opted to remain silent."  (*Id*., PageID.366).  Wilcoxon also argues that Jackson was not excused from liability when the Board disregarded her advice but instead was "even more duty-bound to advise as to proper parliamentary procedure and the correct application of Robert's Rules of Order."  (*Id*.).

This theory of liability is not spelled out in the complaint.  The closest allegation to it comes in paragraph 170, (ECF No. 1-1, PageID.76), where

Wilcoxon states that at the November 2021 meeting, Jackson advised the Board that amending a previously adopted process without previous notice requires a two-thirds vote.  Wilcoxon alleges that "[t]his advice and the fact that the Board did not get a two thirds vote to amend the selection process, did not deter Defendants[,] attorney Linda Bernard, Annie Holt, Lisa Carter and Willie Bell, in the least."  (*Id*.).  This allegation can only be read as one in which Jackson advises the Board on the correct procedure, and the named Commissioners of the Board disregard her advice.  There is no plausible claim for relief stated in this paragraph, nor in any of the other specific factual allegations in the complaint, as to Jackson.

Even if the additional theory of liability against Jackson in Wilcoxon's response was considered, Wilcoxon would still fail to state a claim against her.

"Generally, courts do not concern themselves with whether parliamentary rules are followed; instead, courts are concerned with whether the law of the land is followed."  *Reform Party of U.S. v. Gargan*, 89 F. Supp. 2d 751, 757–58 (W.D. Va. 2000) (citing 59 Am.Jur.2d *Parliamentary Law* § 4 (1987)).  Wilcoxon does not provide, and the undersigned has been unable find, a single federal case in which a parliamentarian is held liable for a board's violation of procedural rules. This is because, generally speaking, parliamentarians act in a "purely advisory" capacity.  *See*, *e.g.*, *Common Cause v. Biden*, 748 F.3d 1280, 1285 (D.C. Cir. 2014) (regarding the "purely advisory" role of the United States Senate

12

Parliamentarian).  To be liable for a constitutional deprivation, an official must be shown to have "*caused* the deprivation of a federal right[.]"  *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (emphasis added, citations omitted). This element is missing when an official acts in an advisory capacity.  *Guindon v. Twp. of Dundee*, No. 09-11501, 2010 WL 5394992, at *5 (E.D. Mich. Dec. 23, 2010), *aff'd sub nom. Guindon v. Twp. of Dundee, Mich.*, 488 F. App'x 27 (6th Cir. 2012) ("Plaintiffs have failed to allege how the Dundee Township Planning Commission or its members violated Plaintiffs' constitutional rights in their *purely advisory* role." (emphasis added)).

Nothing about Wilcoxon's allegations or the contract between Jackson and the Board, (ECF No. 3-3), suggest that Jackson's role as parliamentarian was anything but advisory.  Wilcoxon does not allege that Jackson could have forced the Board to reconsider their vote or follow the rules as she suggested.  Wilcoxon suggests that Jackson could have advised the Board that it had not achieved a two-thirds vote required to amend the previously adopted process without notice.  But having already informed the Board of this fact, it is unclear how her *silence* would constitute a constitutional deprivation upon Wilcoxon, when even further comment would be simply advisory.  Therefore, the undersigned recommends dismissal of Wilcoxon's federal claims against Jackson for failure to state a claim.

B.    Federal Claims against City Defendants

13

Wilcoxon alleges violations of federal law against the City Defendants under 42 U.S.C. §§ 1983, 1985, 1986, and for "exemplary damages."  City Defendants argue that Wilcoxon has failed to state a claim against them and that they are entitled to qualified immunity.

### 1.    Section 1983 Claims

#### a.    Standard

Section 1983 "imposes civil liability on those individuals who, acting under color of state law, deprive a citizen of, among other things, his federally guaranteed constitutional rights." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015).  "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id*.  "To state a claim under § 1983, a plaintiff must set forth facts that, when favorably construed, establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law." *Baynes*, 799 F.3d at 607.

#### b.    Analysis

Wilcoxon cannot state a Fourteenth Amendment due process claim because she was never appointed to the Board secretary position.  "To make out a claim for

a violation of procedural due process, the plaintiff has the burden of showing that

(1) he had a life, liberty, or property interest protected by the Due Process Clause;

(2) he was deprived of this protected interest; and (3) the state did not afford him

adequate procedural rights prior to depriving him of the property interest." *EJS*

*Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (internal

quotation marks and citation omitted).

Simply put, "[a]n employee does not have a constitutionally protected right

to public employment or a property interest in reemployment." *Talbot v. Pyke*, 533

F.2d 331, 332 (6th Cir. 1976).  "To have a property interest in a benefit, a person

clearly must have more than an abstract need or desire for it." *Bd. of Regents of*

*State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

In *Averitt v. Cloon*, 796 F.2d 195 (6th Cir. 1986), the Sixth Circuit

considered a claim in which a defendant had promised to appoint the plaintiff to a

position and then failed to do so.  "[T]he gravamen of the plaintiff's complaint was

the failure of [the defendant] to appoint him to the statutory position of 'friend of

the court' when he, [the defendant], became authorized to do so on July 1, 1983."

*Id*. at 199.  Assuming this allegation to be true, the Sixth Circuit nonetheless found

that there was no property interest at stake in the plaintiff's promise of future

employment, because a plaintiff "must have more than a unilateral expectation of a

property interest, whatever its character.  [She] must have a legitimate claim of

15

entitlement to the claimed property interest to bring it within the procedural protection of the Constitution." *Id*.; *see also Jones v. City of Cortland Police Dep't*, 448 F.3d 369, 372 (6th Cir. 2006) ("[The plaintiff's] conditional employment offer created no property or liberty interest for the purpose of his due process argument."); *Watson v. City of Cleveland*, 202 F. App'x 844, 857 (6th Cir. 2006) (explaining that the denial of right to apply for a position did not constitute an injury to property because the plaintiff "had no property interest in prospective civil service employment."); *Evans v. Cnty. of Summit*, 9 F.3d 107 (Table), 1993 WL 337568 (6th Cir. 1993) ("[Plaintiff], as one of many applicants, can claim no legitimate entitlement to receiving the position of Field Supervisor and thus no property interest.").

The Sixth Circuit in *Averitt* also found that "[p]laintiff's allegation that he was deprived of a liberty interest without due process is equally misplaced." 796 F.2d at 200. If Wilcoxon had been employed and then terminated, she could show deprivation of a liberty interest if "(1) there was a public disclosure of the reasons underlying [her] discharge, and (2) such public disclosure endangered [her] good name, reputation, honor, or integrity." *Id*. But it would "stretch the concept too far to suggest that a person is deprived of a 'liberty' when [she] simply is not rehired in one job but remains as free as before to seek another." *Id*. (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. at 575). Thus, Wilcoxon did not suffer

16

the loss of a liberty interest and was not entitled to a name-clearing hearing under

*Kaplan v. Univ. of Louisville*, 10 F.4th 569, 584 (6th Cir. 2021) or *Chiligirian v.*

*Boris*, 882 F.2d 200 (6th Cir. 1989).

Wilcoxon argues that prospective employment is not the only interest that

can invoke her constitutional protections from the acts of the Board.  She argues

that her "cognizable business expectancy interest . . . to be free from defamation

and an invasion of privacy which would place [her] in a false light" were violated.

(ECF No. 15, PageID.437-438).  But there is no legal authority to support her

contention, which would require an expansion of the recognized rights under the

Constitution and the recognized causes of action under § 1983.  These rights are

clearly considered in the context of one's *liberty* interests involving continued

public employment, as addressed above.  Furthermore, courts have found that

extending these interests to an individual that is not yet employed would "stretch

the concept too far."  *See, e.g.*, *Bd. of Regents of State Colleges v. Roth*, 408 U.S. at

575.  Thus, Wilcoxon's due process claims should be dismissed.

Wilcoxon has also failed to meet the requirements of stating an equal

protection claim.  To do so, she must allege

> (1) that she is a member of a protected group, (2) that she applied for
> and was qualified for a job for which the employer was seeking
> applicants, (3) that she was rejected despite her qualifications, and (4)
> that the employer hired a person with lesser qualifications or
> alternatively, that she was treated worse than "a similarly situated non-
> protected" person.

*Jachyra v. City of Southfield*, 97 F.3d 1452 (6th Cir. 1996) (citations omitted).

Wilcoxon's allegations satisfy the first three prongs, but she has not alleged that

the Board hired someone outside of her protected class or treated her worse than a

"similarly situated non-protected" person.  Thus, this claim should also be

dismissed.

### 2.    Section 1985 Claims

#### a.    Standard

Wilcoxon also alleges that City Defendants conspired to deprive her of her

constitutional rights.

> In *Griffin v. Breckenridge,* 403 U.S. 88, 102–03 . . . (1971), the
> Supreme Court found that in order to state a cause of action under §
> 1985, the plaintiff must allege that the defendants (1) conspired
> together, (2) for the purpose of depriving, directly or indirectly, a
> person or class of persons of the equal protection of the laws, (3) and
> committed an act in furtherance of the conspiracy, (4) which caused
> injury to person or property, or a deprivation of any right or privilege
> of a citizen of the United States, and (5) and that the conspiracy was
> motivated by racial, or other class-based, invidiously discriminatory
> animus.

*Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999).

#### b.    Analysis

Notably, Wilcoxon only alleges that Commissioner Bernard discriminated

against her on the basis of color and political affiliation.  *See* ECF No. 1-1,

PageID.33-40.  She alleges that "Bernard, in her official capacity, sought to

persuade other Board of Police Commissioners, based in part on color, to vote

against [her] candidacy for the Secretary of the Board of Police Commissioners'
position[.]" (*Id.*, PageID.34). She goes on to allege that Bernard and
Commissioner Bell "acted together, in arbitrary fashion, to dismiss and discredit"
her by moving to suspend the search for a Board secretary. (*Id.*, PageID.36). Her
factual allegations under this count only allege a conspiracy between Bernard and
Bell, and only attribute discrimination based on color and affiliation to Bernard.
(*Id.*, PageID.33-40).

These allegations do not support a plausible conspiracy claim against Bell,
Bernard, or the other City Defendants. As to Bell, Wilcoxon does not allege racial
or other animus from him. Without this, her claim against Bernard fails, too, as
there is no conspiracy based on "racial, or other class-based, invidiously
discriminatory animus." As to the other City Defendants, she only alleges
concerted action on the part of Bernard and Bell. "Without more, parallel conduct
does not suggest conspiracy, and a conclusory allegation of agreement at some
unidentified point does not supply facts adequate to show illegality." *Twombly*,
550 U.S. at 556–57.

Furthermore, Wilcoxon's conspiracy claim is barred by the intracorporate
conspiracy doctrine, "which includes local governments, [and] has been developed
to deal with the question whether there are two separate persons to form a
conspiracy." *Jackson v. City of Cleveland*, 925 F.3d 793, 819 (6th Cir. 2019).

19

Under this doctrine, members of a covered entity are not treated as separate persons, but as part of the same. *Id*. In other words, one entity, such as the Board here, cannot act in "conspiracy" with itself.

Wilcoxon, however, argues that an exception to this doctrine applies where "employees act outside the course of their employment, they and the corporation may form a conspiracy under 42 U.S.C. § 1985(3)." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 841 (6th Cir. 1994). The example given in *Johnson* for this exception is where "a manufacturing corporation's employees . . . for discriminatory reasons, . . . attempted to prevent a person from renting an apartment owned by another company. *Id*. In *Johnson*, the plaintiff was a black physician who alleged that she experienced workplace hostility related to her race, that her professional competence was brought into question, and that the hospital president asked the plaintiff's employer to assign a different physician to the hospital. *Id*. at 838. The plaintiff then sued the hospital, its president, and members of its staff for conspiracy under 42 U.S.C. § 1985(3). *Id*.

The court in *Johnson* found that the plaintiff could not assert a conspiracy against the hospital defendants, as their actions did not meet the exception to the intracorporate conspiracy doctrine as alleged. Though the staff's concerns about the plaintiff's medical judgment may have been beyond their expertise, the comments were connected to the legitimate business of the hospital. *Id*. at 841.

20

Even the defendants' complaints that contained rumors and falsehoods were shielded because "they were directed to conditions that affected patient care and the morale of the hospital staff." *Id*. Their complaints were also "made during the course of their working hours, . . . connected to the business of the hospital, and . . . forwarded to the proper managerial authorities." *Id*.

Similar to the defendants in *Johnson*, the Commissioners were acting within the scope of their employment in considering Wilcoxon's candidacy as a future Board secretary. It is not enough that Wilcoxon alleges racial animus on the part of one Commissioner, or that two Commissioners are alleged to have acted in concert to deprive Wilcoxon of the employment opportunity. The remarks and acts of the City Defendants in this case were made regarding legitimate business of the Board during Board meetings. Thus, they constituted acts of the Board as a single entity, which defeats Wilcoxon's claim of a conspiracy between two or more individuals. In short, Wilcoxon's conspiracy claim should be dismissed.

3.    Section 1986 Claim

42 U.S.C. § 1986 states that

[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented[.]

21

"A viable section 1986 claim requires a plaintiff to establish the existence of a cause of action under section 1985." *Lee v. United States*, No. 21-11445, 2021 WL 4942766, at *5 (E.D. Mich. Oct. 22, 2021), *aff'd*, No. 21-1738, 2022 WL 17076779 (6th Cir. July 14, 2022). Thus, "without a violation of § 1985 there can be no violation of § 1986." *Asmar v. Keilman*, 756 F. Supp. 332, 335 (E.D. Mich. 1991) (citing *Browder v. Pipton,* 630 F.2d 1149 (6th Cir. 1980)). Because Wilcoxon has not satisfied the pleading requirements of § 1985, it follows that she cannot make out a claim under § 1986.

### 4. Exemplary Damages

Wilcoxon attempts to state a claim for exemplary damages, alleging willful, malicious, and wanton conduct against City Defendants for the acts described above. Exemplary damages, however, are not an independent cause of action, and dismissal is appropriate where the underlying causes of action have been dismissed. *Price v. AgriLogic Ins. Servs., LLC*, 37 F. Supp. 3d 885, 901 (E.D. Ky. 2014); *Intelligent Sols., Inc. v. Girocheck Fin., Inc*., Case No. 18-1167, 2018 WL 6171470 at *5 (E.D. Mich. 2018). Thus, the undersigned recommends dismissal of this claim as well.

### 5. Claims Against the City and Defendants in Their Official Capacities

In addition to claims against certain City Defendants in their personal capacities, Wilcoxon has sued the City itself and all City Defendants in their

official capacities.  Suits against municipal officials in their "official capacity" constitute suits against the municipality itself.  *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  City Defendants argue that these claims are barred by absolute governmental immunity, and that Wilcoxon has failed to state a proper claim for municipal liability.

As a municipality, the City can only be held liable for constitutional violations that are the result of an unconstitutional policy or custom.  *See Monell v. Dep't of Soc.l Servs.*, 436 U.S. 658 (1978).  Wilcoxon has not pled any policy or custom of the City that is unconstitutional.  Indeed, her claims stem from the allegation that City policy was *not* followed as applied to her candidacy for the Board secretary position.  But "violation of an internal policy does not establish a constitution violation."  *Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 582 (6th Cir. 2020).  Furthermore, "[a] single instance of alleged unconstitutional conduct will not suffice to state a Section 1983 claim against a municipality."  *Snyder v. United States*, 990 F. Supp. 2d 818, 845 (S.D. Ohio 2014).  Because Wilcoxon claims that the City's policies were disregarded in their application to her specific candidacy for the position, she has not pled an unconstitutional policy or custom on the part of the City or City Defendants in their official capacities.  Thus, Wilcoxon's claims against the City and the City Defendants in their official capacities should be dismissed.

23

As to absolute or qualified immunity, it is not necessary to address these issues because Wilcoxon has failed to state a claim for any deprivation of a constitutional right.

### C.    Pendent State Law Claims

In addition to Wilcoxon's federal claims, of which the undersigned recommends dismissal for failure to state a claim, Wilcoxon also asserts a number of state law claims against all defendants.  Defendants argue these claims should also be dismissed.

However, it is well-established that "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims."  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). Federal courts should only exercise supplemental jurisdiction "in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh [ ] concern over needlessly deciding state law issues."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  "When all federal law claims are eliminated before trial, the balance of factors to be considered under pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims."  *Id.* (internal citations omitted).

24

Based on the foregoing authority, and considering the factors, the undersigned recommends dismissing Wilcoxon's pendent state law claims without prejudice. Because Wilcoxon has failed to state a claim under any federal cause of action, the federal courts are not the appropriate forum to decide her state law claims. Rather those claims are best addressed by a state court.

V.     Conclusion

For the reasons stated above, the undersigned RECOMMENDS that defendants' motions to dismiss, (ECF Nos. 3, 4), be GRANTED and that Wilcoxon's federal claims federal claims (Counts V, IX, X, and XI) be DISMISSED WITH PREJUDICE and her state law claims (Counts I, II, III, IV, VI, VII, and VIII) be DISMISSED WITHOUT PREJUDICE.


Dated: March 17, 2023                         s/Kimberly G. Altman
Detroit, Michigan                             KIMBERLY G. ALTMAN
                                              United States Magistrate Judge

<b><u>NOTICE TO PARTIES REGARDING OBJECTIONS</u></b>

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 17, 2023.

s/Carolyn M. Ciesla
CAROLYN M. CIESLA
Case Manager

26