# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

D. Etta Wilcoxon,

               Plaintiff,        Case No. 22-12779

v.                           Judith E. Levy
                           United States District Judge

Linda Bernard, *et al.*,

               Defendants.     Mag. Judge Kimberly G. Altman

_____/

# OPINION AND ORDER DENYING PLAINTIFF'S OBJECTIONS [20], ADOPTING THE R&R [18], GRANTING IN PART DEFENDANT JACKSON'S MOTION TO DISMISS [3], GRANTING IN PART THE CITY DEFENDANTS' MOTION TO DISMISS [4], DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT [24], AND REMANDING THE CASE TO STATE COURT

This case arises from *pro se* Plaintiff D. Etta Wilcoxon's unsuccessful efforts to be selected as the secretary of the City of Detroit's Board of Police Commissioners (the "Board"). On March 17, 2023, Magistrate Judge Kimberly G. Altman issued a Report and Recommendation ("R&R") (ECF No. 18) recommending the Court grant the motions to dismiss filed by Defendant Frances Jackson and the City

Defendants.[1] (ECF Nos. 3, 4.) On April 7, 2023, Plaintiff timely filed seven objections to the R&R. (ECF No. 20.) The City Defendants and Jackson filed responses to Plaintiff's objections. (ECF Nos. 22, 23.) On May 15, 2023, Plaintiff filed a motion to amend the complaint. (ECF No. 24.) Defendants filed responses opposing the motion (ECF Nos. 26, 27.)

For the reasons set forth below, the Court DENIES Plaintiff's objections, ADOPTS the R&R, GRANTS IN PART Jackson's motion to dismiss, GRANTS IN PART the City Defendants' motion to dismiss, and DENIES Plaintiff's motion to amend the complaint.

## I.   Background

The factual and procedural background set forth in the R&R is fully adopted as though set forth in this Opinion and Order.

## II.   Legal Standards

### A.   Motion to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light

---

[1] The City Defendants are Defendants Linda Bernard; Willie Bell; Annie Holt; Lisa Carter; Melanie White; Jim Holly; Willie Burton; Jesus Hernandez; John Tipton, II; Tamara Terrance; Theresa Blossom; Ericka Savage-Whitley; and the City of Detroit. As Judge Altman did in her R&R, the Court adopts the spellings provided by the City Defendants.

most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## B.   Objections to a Report and Recommendation

A party may object to a magistrate judge's report and recommendation on dispositive motions, and a district judge must resolve proper objections under a de novo standard of review. 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b)(1)–(3). "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings,

recommendations, or report to which [the party] objects' and to 'state the basis for the objection.'" *Pearce v. Chrysler Group LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that merely restate arguments already presented to the magistrate judge are improper, *Coleman-Bey v. Bouchard*, 287 F. App'x 420, 422 (6th Cir. 2008) (citing *Brumley v. Wingard*, 269 F.3d 629, 647 (6th Cir. 2001)), as are those that are vague and dispute the general correctness of the report and recommendation. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Id.* (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, the objections must be clear and specific enough to permit the Court to squarely address them on the merits. *See Pearce*, 893 F.3d at 346.

### C.   Motion to Amend

A party seeking to amend a claim, when such an amendment would not be as a matter of course, "may amend its pleading only with

the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave should be denied where the amendment demonstrates defects "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Brown v. Chapman*, 814 F.3d 436, 443 (6th Cir. 2016) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Parchman v. SLM Corp.*, 896 F.3d 728, 738 (6th Cir. 2018) (quoting *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017)).

## III.   Analysis

### A.   Objection #1

In her first objection, Plaintiff raises several challenges to the R&R's analysis of her claim under 42 U.S.C. § 1983. As set forth below, none of these arguments are availing.

### i.    Objection #1(a), (b), (c)(2)

In subparts (a), (b). and (c)(2), Plaintiff objects to Judge Altman's analysis of her § 1983 claim under the Due Process Clause of the Fourteenth Amendment. (*See* ECF No. 20, PageID.483–491, 494–498.)

The R&R first analyzed Plaintiff's procedural due process claim based on Plaintiff's alleged property interest in the secretary position. (ECF No. 18, PageID.468–469.) While not entirely clear, Plaintiff appears to reject the idea that her claim is premised on a property interest at all. (*See* ECF No. 20, PageID.483–486.) Regardless, Judge Altman correctly held that, as an applicant, Plaintiff did not have a property interest in the secretary position. While the Constitution does not create property interests, "[a] property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances." *Hasanaj v. Det. Pub. Sch. Cmty. Dist.*, 35 F.4th 437, 447 (6th Cir. 2022) (citations omitted). "But neither a 'unilateral expectation' to enjoy the alleged property interest nor an 'abstract need or desire for it' is enough." *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 578(6th Cir. 2021) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Instead, "[t]he hallmark of property is an individual

6

entitlement grounded in state law, which cannot be removed except for cause." *Id.* (quoting *Garvie v. Jackson*, 845 F.2d 647, 651 (6th Cir. 1988)). Here, Plaintiff cannot assert a property interest in the secretary position because she had only a unilateral expectation in being selected by the Board. She points to nothing in state law or the City charter that demonstrates she was entitled to the position. Nor could she, given the Board could have simply selected the other remaining candidate to fill the position. Thus, Judge Altman did not err, and subpart (a) of Plaintiff's first objection is denied.

The R&R next concludes that Plaintiff was not deprived of a liberty interest without due process. (ECF No. 18, PageID.469–471.) Plaintiff objects to this analysis, asserting that she has a liberty interest "as an applicant whose reputation was destroyed." (ECF No. 20, PageID.486; *see also id.* at PageID.486–491.) But, as Judge Altman correctly explained, a liberty interest in this context requires that the individual first be employed and then terminated. *See Crosby v. Univ. of Ky.*, 863 F.3d 545, 555 (6th Cir. 2017) (explaining that "the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment" (quoting *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir.

2002)). This is because "[w]here state law 'does not extend to [the employee] any legal guarantee of present enjoyment of reputation which has been altered as a result of [the employer's] actions[,]' no liberty interest is implicated." *Id.* at 556 (fourth alteration in original) (quoting *Paul v. Davis*, 424 U.S. 693, 711–12 (1976)). Moreover, even if Plaintiff possessed a liberty interest here, the Sixth Circuit has explained that "[a] statement that merely makes a plaintiff less attractive to other employers does not constitute a liberty deprivation." *Dibrito v. City of St. Joseph*, 675 F. App'x 593, 594 (6th Cir. 2017) (quoting *Med Corp. v. City of Lima*, 296 F.3d 404, 414 (6th Cir. 2002)); *see also Crosby*, 863 F.3d at 557 (holding that the stigmatizing governmental action must so negatively affect the plaintiff's reputation that it effectively forecloses any opportunity to practice their chosen profession). While suggestions by Bernard that Plaintiff was being untruthful could make her less attractive to other employers (*see, e.g.*, ECF No. 1-1, PageID.16–17), these suggestions do not rise to the level of a constitutional violation. As such, subpart (b) of Plaintiff's first objection is also denied.

The R&R also rejected Plaintiff's assertions that she possessed a liberty interest based on a "cognizable business expectancy," her right

8

to "be free from defamation," and a false light invasion of privacy. (ECF No. 18, PageID.470 (quoting ECF No. 15, PageID.437–438).) In her objections, Plaintiff again asserts that these alleged violations of Michigan law support her § 1983 claim. (ECF No. 20, PageID.494–498.) However, Plaintiff fails to point to any legal authority that supports this position. This is likely because "[i]t has long been established that the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983." *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010). Accordingly, subpart (c)(2) of Plaintiff's first objection is without support and is therefore denied.

### ii.   *Objection #1(d)*

Subpart (d) of Plaintiff's first objection challenges the R&R's analysis of her § 1983 claim under the Equal Protection Clause of the Fourteenth Amendment. (*See* ECF No. 20, PageID.498–499.) In recommending that this claim be dismissed, Judge Altman explained in her R&R that Plaintiff "has not alleged that the Board hired someone outside of her protected class or treated her worse than a 'similarly situated non-protected' person." (ECF No. 18, PageID.471.) The Court concludes that Judge Altman properly analyzed Plaintiff's equal

9

protection claim. Moreover, Plaintiff's objection fails to point to any allegations in her complaint that would satisfy this requirement. As such, subpart (d) of Plaintiff's first objection is also denied.

### iii.   Objection #1(c)(1)

Finally, in subpart (c)(1), Plaintiff disputes Judge Altman's summary of the materials outside of the complaint a court may consider when ruling on a motion to dismiss. (ECF No. 20, PageID.491–493.) Specifically, Plaintiff takes issue with the R&R's use of "*documents* that are a matter of public record" instead of "public records" as stated in *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015).[2] (ECF No. 20, PageID.491–492 (emphasis in original).) Plaintiff appears to believe that the R&R's use of "documents" implies that Judge Altman failed to consider the recordings of the Board's meetings available on the internet. (*See id.* at PageID.492–493.) But as Plaintiff herself points

---

[2] In support of her position, Plaintiff discusses two cases from the Sixth Circuit. (*See* ECF No. 20, PageID.492–293.) Neither case supports Plaintiff's arguments. In *Neogen Corp. v. Neo Gen Screening, Inc.*, the court addressed the standard for analyzing when a defendant purposely avails itself of a particular forum for purposes of personal jurisdiction through a website. 282 F.3d 883, 890 (6th Cir. 2002). And in *Miller v. Commissioner of Social Security*, the Sixth Circuit considered the appropriate use of additional evidence outside the administrative record in a Social Security appeal. 811 F.3d 825, 839–40 (6th Cir. 2016). There is no discussion of the relevant standard for a motion to dismiss in either case. As such, Plaintiff's reliance on these cases is unavailing.

out, the events of those Board meetings are detailed throughout her complaint. (*See id.*) As such, the relevant events were already before Judge Altman, and this alleged distinction between "documents that are a matter of public record" and "public records" has no bearing on the disposition of Plaintiff's claims. Accordingly, subpart (c)(1) of Plaintiff's first objection is without merit and is denied.

## B.   Objection #2

Plaintiff next objects to Judge Altman's recommendation that the Court dismiss Plaintiff's claim under 42 U.S.C. § 1985.[3] (ECF No. 20, PageID.500–507.) The R&R determined that Plaintiff failed to plausibly plead a conspiracy between Bell, Bernard, and the other City Defendants and that the claim was barred under the intracorporate conspiracy doctrine. (ECF No. 18, PageID.471–474.) As Judge Altman summarized: "The remarks and acts of the City Defendants in this case

---

[3] In her complaint, response to the City Defendants' motion to dismiss, and objections to the R&R, Plaintiff quotes from subsection (1) of § 1985. (ECF No. 1-1, PageID.72; ECF No. 10, PageID.304, ECF No. 20, PageID.501.) However, that subsection concerns "conspiracies to interfere with federal officers in the performance of their duties," and is inapplicable here. *Courser v. Allard*, 969 F.3d 604, 618 (6th Cir. 2020) (citation omitted). By contrast, § 1985(3) "prohibits conspiracies to deprive persons of their equal protection rights." *Id.* Because Plaintiff is proceeding *pro se*, Judge Altman appropriately construed Plaintiff's § 1985 claim as one under subsection (3). *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).

were made regarding legitimate business of the Board during Board meetings. Thus, they constituted acts of the Board as a single entity, which defeats Wilcoxon's claim of a conspiracy between two or more individuals." (*Id.* at PageID.474.)

The Court agrees with Judge Altman that the intracorporate conspiracy doctrine bars Plaintiff's § 1985 claim. Under that doctrine, "members of the same legal entity cannot conspire with one another as long as their alleged acts were within the scope of their employment." *Jackson v. City of Cleveland*, 925 F.3d 793, 819 (6th Cir. 2019) (citations omitted); *see also Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991) (holding that the intracorporate conspiracy doctrine barred the plaintiff's § 1985 conspiracy claim against employees or agents of the same local board of education). However, an exception to the intracorporate conspiracy doctrine applies if "the defendants were alleged to have been acting outside the scope of their employment." *Jackson*, 925 F.3d at 819 (citation omitted).

Here, the complaint alleges that Bernard and Bell conspired to prevent Plaintiff from being appointed secretary of the Board. (*See* ECF

12

No. 1-1, PageID.74–78.) Plaintiff appears to contend that Bernard and Bell's actions fell outside the scope of their employment as commissioners. (*See* ECF No. 20, PageID.505–506.) But the complaint makes clear that these alleged acts were undertaken while considering Plaintiff's candidacy for secretary during specific Board meetings. (*See* ECF No. 1-1, PageID.74–78.) Moreover, Plaintiff's complaint expressly states that Bernard and Bell were acting "in the course and scope of their authority and in the course of their official duty" at all material times. (*Id.* at PageID.10–11.) The Sixth Circuit has previously held that such allegations foreclose a later attempt to invoke the scope-of-employment exception to the intracorporate conspiracy doctrine. *See Jackson*, 925 F.3d at 819–20 (holding that the exception could not be asserted when the complaint affirmatively alleged the defendants were acting within the scope of their employment). Because Bernard and Bell were both acting within the scope of their employment as commissioners of the Board, the intracorporate conspiracy doctrine bars Plaintiff's § 1985 claim. Accordingly, Plaintiff's second objection is denied.

### C.   Objection #3

In her third objection, Plaintiff disputes the R&R's conclusion that "[b]ecause Wilcoxon has not satisfied the pleading requirements of § 1985, it follows that she cannot make out a claim under § 1986." (ECF No. 20, PageID.507 (quoting ECF No. 18, PageID.475).) As set forth above, Judge Altman correctly concluded that Plaintiff's § 1985 claim is barred under the intracorporate conspiracy doctrine. And, as the R&R accurately explained, a claim under 42 U.S.C. § 1986 requires a plaintiff to first state a viable claim under § 1985. *See Amadasu v. Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008). Thus, Plaintiff's third objection is denied.

### D.   Objections #4–5

Plaintiff's fourth and fifth objections raise several arguments regarding the R&R's analysis of her federal claims against Jackson. (ECF No. 20, PageID.507–513.) The Court addresses each of these contentions in turn.

In her response to Jackson's motion to dismiss, Plaintiff asserted that Jackson failed to correct the Board on parliamentary procedure during Plaintiff's interview and was "duty bound" to do so. (*See* ECF No.

14

11, PageID.366.) Judge Altman found that the only specific factual allegations in the complaint regarding Jackson's conduct appear in ¶ 170 and that those allegations do not support Plaintiff's newly proffered theory of liability for Jackson. (ECF No. 18, PageID.464–465.) Plaintiff objects to this conclusion, arguing that ¶¶ 125, 160, 186, and 187 of her complaint adequately plead Jackson's omissions. (*See* ECF No. 20, PageID.507–510.) However, these additional paragraphs identified by Plaintiff are simply conclusory statements that certain actions or omissions by Jackson and the City Defendants were done "knowingly and intentionally and with a reckless indifference to and disregard for Plaintiffs rights." (ECF No. 1-1, PageID.49–50, 73–74, 81–82.) Thus, the R&R correctly held that the complaint's factual allegations do not support Plaintiff's theory that Jackson was "duty bound" to challenge the Board's actions, and this portion of Plaintiff's fourth objection is denied.[4]

The R&R also concluded that, even if Plaintiff's additional theory of liability is considered, the complaint fails to state a claim against

---

[4] Plaintiff also objects to the R&R's summary of Jackson's related argument. (ECF No. 20, PageID.508–509 (quoting ECF No. 18, PageID.463–464).) But Judge Altman accurately summarized Jackson's position. As such, this portion of Plaintiff's fourth objection is without merit.

Jackson. (ECF No. 18, PageID.465–466.) Judge Altman explained that parliamentarians generally act in a purely advisory capacity that does not provide a basis for liability and that Plaintiff had failed to demonstrate that Jackson's role was "anything but advisory." (*Id.*) Plaintiff objects to this conclusion, pointing to certain provisions of the City of Detroit charter and the affidavit of former commissioner William M. Davis. (*See* ECF No. 20, PageID.510–511.) In his affidavit, Davis stated that Jackson "was expected, pursuant to her contract with the Board, to set the [r]ecord straight." (ECF No. 11, PageID.373–374.) Nevertheless, nothing in the Davis affidavit or in the portions of the charter Plaintiff cites to demonstrate that Jackson's role as parliamentarian was anything other than an advisory position. Additionally, the plain language of Jackson's contract support's Judge Altman's conclusion that the position was purely advisory. (ECF No. 3-3, PageID.244 (providing for "[p]arliamentary services to include: . . . attend the meetings of the [Board] to advise on parliamentary procedures" and "respond to questions on parliamentary rules and interpretation of the bylaws.").) As such, this portion of Plaintiff's fourth objection is denied.

Finally, Plaintiff asserts in her fifth objection that Judge Altman engaged in fact finding when she stated: "But having already informed the Board of this fact, it is unclear how [Jackson's] silence would constitute a constitutional deprivation upon Wilcoxon, when even further comment would be simply advisory." (ECF No. 20, PageID.512–513 (quoting (ECF No. 18, PageID.466).) But this statement is a legal—not factual—conclusion. As Judge Altman correctly explained, even if Plaintiff is correct that Jackson was obligated to speak up, Jackson's failure to do so would not amount to a constitutional violation as her role was merely advisory. Thus, Plaintiff's fifth objection is without merit and is denied.[5]

## E.   Objection #6

In her sixth objection, Plaintiff challenges the R&R's recommendation to dismiss Plaintiff's claim for exemplary damages. (ECF No. 20, PageID.513.) She contends that dismissal of this claim is

---

[5] In her fifth objection, Plaintiff also objects to the R&R's statement that the "City Defendants state that Wilcoxon is a public figure in the City of Detroit and within the Michigan political sphere, as suggested in the complaint." (ECF No. 20, PageID.513 (quoting ECF No. 18, PageID.460).) But Judge Altman merely summarized the arguments made by the City Defendants and did not rely on these assertions in ruling on the motions. The Court therefore rejects this portion of Plaintiff's fifth objection.

17

inappropriate because dismissal of "the underlying causes of action" is not warranted. (*Id.*) However, as Judge Altman correctly held, there is no independent cause of action under federal civil rights law for exemplary damages, and Plaintiff points to no authority to the contrary. Moreover, the Court concludes that dismissal of this claim with prejudice is also appropriate because exemplary damages is not an independent cause of action under Michigan law. *See Chungag v. Wells Fargo Bank, N.A.*, 489 F. App'x 820, 826 (6th Cir. 2012) (citations omitted). Accordingly, Plaintiff's sixth objection is denied.

### F.    Objection #7

#### i.    *Official Capacity Claims, Municipal Liability, and Qualified Immunity*

In her seventh objection, Plaintiff challenges the R&R's recommendation that "Wilcoxon's claims against the City and the [individual] City Defendants in their official capacities should be dismissed" and the R&R's conclusion that, "[a]s to absolute or qualified immunity, it is not necessary to address these issues because Wilcoxon has failed to state a claim for any deprivation of a constitutional right." (ECF No. 20, PageID.513–518 (quoting ECF No. 18, PageID.476–477).)

As an initial matter, Judge Altman correctly summarized the relevant law on official capacity claims. "An official capacity claim filed against a public employee generally represents another way of pleading an action against the public entity that agent represents." *Curtis v. Breathitt Cnty. Fiscal Court*, 756 F. App'x 519, 525 (6th Cir. 2018) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." (citation omitted)). "'As long as the government entity receives notice and an opportunity to respond,' courts treat an official capacity suit as a suit against the entity." *Curtis*, 756 F. App'x at 525 (quoting *Graham*, 473 U.S. at 166). Here, the City was on notice and responded to the complaint. As such, Plaintiff's official capacity claims against the individual City Defendants are properly analyzed as a claim for municipal liability against the City.

The Court also agrees with Judge Altman that Plaintiff fails to state a claim for municipal liability against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Under *Monell*, "a local government can be sued under § 1983 only when a policy or

custom of that government caused the injury in question." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. at 694; *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). To show the municipality has an unconstitutional "policy or custom," a plaintiff must establish: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision[-]making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). Here, Plaintiff fails to identify any unconstitutional policy or custom of the City that caused her alleged injuries. Instead, she points only to five alleged violations of City policy by the individual City Defendants. (*See* ECF No. 20, PageID.514.) As such, Plaintiff fails to state a claim for municipal liability against the City.

Finally, because Plaintiff failed to allege a constitutional violation, Judge Altman did not err in concluding that it was not necessary to analyze the issue of qualified immunity. *See Guertin v. Michigan*, 912 F.3d 907, 917 (6th Cir. 2019) (explaining that a "plaintiff must show '(1)

that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct'" to overcome qualified immunity). Nor was it necessary for Judge Altman to address absolute or governmental immunity under Michigan law given her recommendation to dismiss the remaining state-law claims without prejudice. (*See* ECF No. 18, PageID.477–478.)

Accordingly, the above portions of Plaintiff's seventh objection are denied.

### ii.   *First Amendment Claim*

Plaintiff's seventh objection also briefly raises her claim under the First Amendment. (ECF No. 20, PageID.515.) The City Defendants did not discuss this portion of Plaintiff's § 1983 claim in their motion to dismiss (*see* ECF No. 4, PageID.264–266), and Plaintiff did not address her First Amendment theory in her response. (*See generally* ECF No. 10.) Nevertheless, the complaint asserts in ¶ 131 that Bernard deprived her of her First Amendment rights in how she conducted Plaintiff's interview. (ECF No. 1-1, PageID.55.) In her objections, Plaintiff argues that Bernard, Bell, and the City Defendants violated her "First

Amendment right to be free from political persecution and retaliation."
(*See* ECF No. 20, PageID.515.)

To establish a First Amendment retaliation claim, a plaintiff must establish that "(1) [she] engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against [her] that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [her] protected conduct." *Dixon v. Univ. of Toledo*, 702 F.3d 269, 274 (6th Cir. 2012) (quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006)). Here, Plaintiff complaint fails to identify the constitutionally protected speech that motivated any adverse action taken by Bernard, Bell, or the other City Defendants. *Cf. Crawford v. Columbus State Cmty. Coll.*, 196 F. Supp. 3d 766, 774 (S.D. Ohio 2016) ("Put simply, 'the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs,' including hiring and promotion decisions." (quoting *Connick v. Myers*, 461 U.S. 138, 149 (1983)). Accordingly, Plaintiff's complaint fails to

state a § 1983 claim under the First Amendment, and this portion of her seventh objection is denied.

### G.   Plaintiff's Motion to Amend

Plaintiff also filed a motion to amend her complaint. (ECF No. 24.) Her proposed first amended complaint spans 108 pages and 256 paragraphs. (*See* ECF Nos. 24-1, 24-2, 24-3, 25.) Through her motion and proposed amended complaint, Plaintiff seeks to (i) add City of Detroit Mayor Michael E. Duggan as a Defendant, (ii) assert a separate claim under the First Amendment (Count XII), (iii) add a claim for violation of 42 U.S.C. § 1981 (Count XIII), (iv) assert additional claims against Jackson, and (v) add further factual allegations to support her existing claims. The City Defendants and Jackson oppose the motion. (*See* ECF No. 26, 27.) As set forth below, Plaintiff's proposed amendment is futile, and her motion to amend is denied.

### i.   *Defendant Duggan*

Plaintiff seeks to add Duggan as a Defendant, asserting that he conspired with Bernard, Bell, Jackson, and others to deprive her of the secretary position based on her race and prior candidacy for mayor against Duggan. (*See* ECF No. 24, PageID.752–753, 763–765.) While

Duggan's name appears more than 150 times in Plaintiff's proposed amended complaint. (*see* ECF Nos. 24-1, 24-2, 24-3, 25), the Court finds that the proposed amended complaint fails to plead any factual allegations related to Duggan. *See Iqbal*, 556 U.S. at 678. Instead, Plaintiff's allegations regarding Duggan are entirely conclusory.[6] Moreover, Plaintiff cannot succeed on her existing federal claims against Duggan for the same reasons already set forth at length in the R&R and in this Opinion and Order. As such, Plaintiff's attempt to add Duggan as a Defendant is futile.

### ii.    *Proposed First Amendment Claim*

In her proposed amended complaint, Plaintiff seeks to assert an additional claim under the First Amendment. (*See* ECF No. 25, PageID.873–881; *see also* ECF No. 24, PageID.757–759, 771–774.) The basis for this claim is difficult to discern. Plaintiff alleges that certain City Defendants and Duggan conspired "to deprive the Plaintiff of her freedom of speech by deliberately and unjustifiably attacking Plaintiff's right to be a candidate for political office, based in part, on Plaintiff's

---

[6] In many instances, Plaintiff simply inserts Duggan's name into her existing conclusory allegations regarding Bernard and Bell's alleged conduct during the relevant Board meetings. (*Compare* ECF No. 24-2, PageID.819–822, ¶¶ 120–129 *with* ECF No. 1-1, PageID.44–46, ¶¶ 108–117.)

race and color." (ECF No. 25, PageID.873–874.) She appears to assert that these actions were taken by Defendants because of her 2021 candidacy for mayor against Duggan. (*See* ECF No. 24, PageID.758, 763, 773; *see also* ECF No. 24-2, PageID.807 (alleging that Defendants "intend[ed] to discriminate against Plaintiff based upon Plaintiff's run for Mayor of the City of Detroit against Michael Duggan").)

As an initial matter, it is unclear how Defendants' actions during the hiring process for the secretary position interfered with "Plaintiff's right to be a candidate for political office." (*See* ECF No. 25, PageID.873–874.) Plaintiff alleges that she applied for the secretary position on September 6, 2021, was contacted for an interview in October 2021, and interviewed in person on November 4, 2021. (ECF No. 1-1, PageID.13, 15–16; ECF No. 24-1, PageID.787, 788–789.) However, the Court takes judicial notice that each of these events took place after the August 3, 2021 primary election, in which Plaintiff failed to qualify as a nominee for the general election in November.[7] Thus,

---

[7] Section 3-110 of the City charter indicates that "[t]he number of nominees for each elective city office selected at each primary election may not exceed twice the number of openings in the office to be filled." (ECF No. 3-2, PageID.149.) As a result, the top two candidates for mayor in the primary advance to the general election. In the August 3, 2021 primary election, Duggan placed first and received

Defendants' alleged actions during the hiring process could not have restricted Plaintiff's actions or speech as a candidate for mayor.

To the extent Plaintiff is asserting that certain City Defendants and Duggan sought to retaliate against her for running for mayor (*see* ECF No. 24, PageID.753–754, 773–774; ECF No. 24-2, PageID.807–809, 827), her claim fairs no better. As set forth above, a claim for retaliation under the First Amendment requires that the plaintiff first have engaged in protected conduct. *Dixon*, 702 F.3d at 274. However, the Sixth Circuit has repeatedly held that "there is no protected right to candidacy under the First Amendment." *Murphy v. Cockrell*, 505 F.3d 446, 450 (6th Cir. 2007) (quoting *Carver v. Dennis*, 104 F.3d 847, 850-51 (6th Cir. 1997)); *see also Fouts v. Warren City Council*, 97 F.4th 459, 466 (6th Cir. 2024) (affirming that "there is no fundamental right to run for office"). While Plaintiff's speech as a political candidate is constitutionally protected, she fails to identify any specific statements she made as a candidate that were the basis of Defendants' alleged

---

50,856 votes. *See Election Summary Report August3, 2021–DETROIT Primary Election*, *OFFICIAL RESULTS* (Aug. 17, 2021)*, https://detroitmi.gov/sites/detroit mi.localhost/files/2022-08/2021%20Election%20Summary%20Report_Primary.pdf*. Anthony Adams placed second with 7,014 votes. *Id*. Plaintiff finished sixth with 894 votes. *Id*.

retaliation. *See Murphy*, 505 F.3d at 451 ("[W]hile the mere fact of candidacy [is] not constitutionally protected, the expression of one's political belief[s] still [falls] under the ambit of the First Amendment.") As such, Plaintiff has not articulated a viable claim for retaliation, and Plaintiff's proposed First Amendment claim is futile.

### iii.   Proposed § 1981 Claim

Plaintiff also seeks to assert an additional claim against certain City Defendants and Duggan under 42 U.S.C. § 1981. (ECF No. 25, PageID.881–885; *see also* ECF No. 24, PageID.767–768.) "[T]o establish a claim for racial discrimination under section 1981, a plaintiff must plead and prove that (1) [s]he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against [her] on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a)." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). Additionally, "a plaintiff must initially plead and ultimately prove that, but for race, [they] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020). However, Plaintiff's allegations

27

regarding Defendant's alleged discriminatory intent in her proposed amended complaint are entirely conclusory and insufficient to support a discrimination claim under § 1981. *See HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012) ("A complaint that includes only conclusory allegations of discriminatory intent without supporting factual allegations does not sufficiently show entitlement to relief." (citing *Iqbal*, 556 U.S. at 680)). As such, Plaintiff's proposed § 1981 claim is futile.

### iv.    *Additional Claims Against Jackson*

Plaintiff also seeks to expand her claims against Jackson, asserting that Jackson "knew" that she had an obligation to speak up in oppositions to the Boards alleged violations of parliamentary procedures. (*See* ECF No. 24, PageID.759–760, 763, 768, 776; ECF No. 24-2, PageID.811–812.) However, none of these allegations alter the conclusion that Jackson's role as parliamentarian was purely advisory. And as set forth at length in the R&R and in this Opinion and Order, Jackson's purely advisory role does not provide a basis for liability under federal civil rights law. Thus, Plaintiff's proposed amendments with respect to Jackson are futile.

28

> ### *v. Additional Facts to Support Existing Claims Against the City Defendants*

Finally, Plaintiff contends that additional factual allegations in her proposed amended complaint cure the deficiencies the R&R identified in her existing claims. (*See* ECF No. 24, PageID.756–758, 765–766.) The Court has carefully reviewed the relevant allegations in Plaintiff's proposed amended complaint and the attached exhibits. However, nothing in these additional allegations or exhibits alters the Court's analysis of Plaintiff's claims under §§ 1983, 1985, and 1986. Therefore, any amendment to add these further allegations is futile.

Accordingly, each of Plaintiff's proposed amendments to her complaint are futile. Therefore, Plaintiff's motion to amend the complaint is denied.

## IV. Conclusion

For the reasons set forth above, Plaintiff's objections (ECF No. 20) are DENIED. The R&R (ECF No. 18) is ADOPTED. Defendant Jackson's motion to dismiss (ECF No. 3) is GRANTED IN PART. The City Defendants' motion to dismiss (ECF No. 4) is GRANTED IN PART.

Plaintiff's motion to amend the complaint (ECF No. 24) is DENIED.

Plaintiff's federal claims (Counts V, IX, X, and XI) are DISMISSED WITH PREJUDICE. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims (Counts I, II, III, IV, VI, VII, VIII). The case is REMANDED to the Wayne County Circuit Court.[8]

IT IS SO ORDERED.

Dated: September 30, 2024          s/Judith E. Levy
Ann Arbor, Michigan                JUDITH E. LEVY
                                   United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 30, 2024.

                                   s/William Barkholz
                                   WILLIAM BARKHOLZ
                                   Case Manager

---

[8] While the R&R recommends that the state law claims be dismissed without prejudice (ECF No. 18, PageID.478), the Sixth Circuit has indicated that remand is appropriate when all federal claims are dismissed and the action was previously removed from state court. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010).

30